UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

HOME BUILDING CORPORATION,

Debtor.
-----------------------------------------------------------------x

Case No. 24-72229-reg

Chapter 11

## DECISION

[Re: Application for Compensation, ECF 43]

Before the Court is the Application of the Law Office of Ronald D. Weiss, P.C. (the

"Weiss Firm" or "Debtor's Counsel"), as counsel to the chapter 11 Debtor, for compensation for

professional services rendered during this chapter 11 case. The Weiss Firm seeks $24,979 for

services rendered from June 10, 2024 through October 24, 2024, and reimbursement of $2,400 in

expenses.[1] The Application is opposed by the Office of the United States trustee ("UST").

Resolution of this matter implicates an examination of certain fundamental principles of

bankruptcy, as well as bankruptcy counsel's role in the chapter 11 process. First and foremost,

the Bankruptcy Code ("Code") is designed to provide relief to debtors of all sizes who are

presumed to be honest and in need of help. Bankruptcy judges and the professionals that practice

in the bankruptcy courts, including the attorneys representing the UST, strive on a daily basis to

provide all parties an honest forum to resolve complex problems. In the roles we play, it is our

shared responsibility to do all in our power to reduce or eliminate any improper use of the

bankruptcy process. Among other things, this includes the court's responsibility to act in an

---

[1]    The Weiss Firm fee application initially sought $2,500 reimbursement of expenses. However, in its reply to the UST objection, the Weiss Firm's list of expenses only added up to $2,400. *Compare* ECF 43 *with* ECF 53.

1

expeditious manner on chapter 11 cases filed for reasons that are incompatible with the Code. The reality facing all courts, including the federal courts is that we face an increasing workload at the same time our resources are impacted by budgetary reductions. To allow cases that should be resolved quickly to burden the court's docket without any real chance for success has far reaching impact on the otherwise legitimate cases that require and deserve the court's time and resources.

As more lawyers venture into the bankruptcy courts, particularly in representing chapter 11 debtors, it has become apparent that some lack the fundamental knowledge and skills necessary to effectively serve their clients. This has contributed to an overload of cases that more experienced bankruptcy professionals likely would not have filed. Although the court is powerless to prevent frivolous filings and the mishandling of cases, it does have the power to review and approve compensation. It is the court's responsibility to determine whether a professional retained by the estate satisfies the statutory criteria justifying the compensation requested. In this instance, it is clear to this Court that the Weiss Firm failed to comprehend its fundamental duties to the Debtor, to the estate, and to this Court.

For these reasons, the Court denies the Weiss Firm's request for compensation in its entirety and grants its request for expenses in the amount of $2,400, subject to documentation.

### FACTS AND PROCEDURAL HISTORY

The Debtor filed chapter 11 on June 10, 2024 ("Petition Date"), represented by the Weiss Firm. The Debtor's primary asset is commercial real property located in West Babylon, NY (the "Property") which the Debtor valued at $1,500,000 in Schedule A/B. ECF 1. The Debtor's schedules as originally filed list $0 unsecured creditors and one secured creditor with a mortgage

on the Property, Pitsa Kadianakis ("Secured Creditor"). According to the Debtor, the mortgage balance as of the Petition Date was $480,000. The Debtor's Schedule G disclosed that the Debtor leases the Property to a yoga studio for $10,000 per month, and it appears that the tenant was current with rental payments as of the Petition Date.[2] *See* Part 1 of Statement of Financial Affairs, Official Form 207, ECF 1. The Debtor does not dispute that it filed bankruptcy to stay a pending foreclosure by the Secured Creditor.

The Debtor paid the Weiss Firm a $30,000 retainer pre-petition, plus $1,738 for the Court filing fee; $100 for an asset search; $37 for NAICS Code Search; and $625 for a judgment lien search. ECF 19.

At the first status conference held on July 15, 2024, Debtor's Counsel represented that the case involved a dispute with the Secured Creditor, specifically, that the Debtor's principal granted a mortgage on his residence and made a substantial ($250,000) payment on the secured debt, which payment he alleged was not applied by the Secured Creditor. At the status conference, the Court explained to the Weiss Firm serious questions presented by the chapter 11 filing, as it has with similar issues on numerous other occasions. In this case, the Debtor had a $120,000 annual rental stream, which apparently was not used to pay the Secured Creditor; the Debtor had no unsecured creditors and therefore would not have any class to vote in favor of a plan, and it appeared therefore there was no possibility of a successful case. The Court advised Debtor's Counsel that the Debtor should utilize what time it had in chapter 11 to work out a deal

---

[2]    To date, no one has explained why this rental stream was not used to pay the Secured Creditor, or where these funds went.

with the Secured Creditor as there was significant equity in the Property. The status conference was adjourned to August 12, 2024.

On August 11, 2024, the Debtor filed an amended Schedule F to include 3 creditors with total claims of $4,500. ECF 13. The next day, at the adjourned status conference, Debtor's Counsel reported that it now had an unsecured voting class and indicated the Debtor's intention to move in state court to attack the foreclosure judgment due to Secured Creditor's failure to credit the $250,000 payment. Secured Creditor's counsel represented on the record that the Secured Creditor did in fact credit the Debtor's account for the $250,000 payment, and it would welcome a payoff at the approximately $630,000 balance. The status conference was adjourned to September 16, 2024, to give the Debtor time to work out a deal with the Secured Creditor.

The Weiss Firm filed a motion to be retained as counsel, and an order was entered on September 9, 2024, authorizing that retention. ECF 19, 20. On September 13, 2024, the Debtor filed an application to retain a broker to sell the Property. ECF 22, 25, 26.

At the September 16, 2024 status conference, Debtor's Counsel reported that although the Debtor filed a motion to retain a broker to sell the Debtor's Property, the Debtor was not in fact planning to sell the Property. The sale would be plan B if the Debtor was unable to fund a reorganization plan. Debtor's Counsel reiterated the Debtor's intention to seek reconsideration of the foreclosure judgment amount in state court.

In the meantime, the UST moved to dismiss or convert this case to chapter 7 ("Motion to Dismiss"). ECF 16. The hearing on the Motion to Dismiss was originally scheduled for September 30, 2024, but was adjourned without an appearance to October 21, 2024. The Debtor opposed the Motion to Dismiss arguing that it had complied with all of its statutory obligations

as a chapter 11 debtor in possession and had obtained third-party financing to pay off the Secured Creditor, or, alternatively planned to sell the Property. However, the Debtor reiterated its intention, while in chapter 11, to return to state court to challenge the foreclosure judgment calculations.

On October 11, 2024, four months post-Petition Date, the Debtor filed a motion, and scheduled it for hearing on November 18, 2024, for a comfort order that it would not be a violation of the automatic stay for the Debtor to return to state court to seek reconsideration of the foreclosure judgment calculation. ECF 29.

The Court held an adjourned status conference and hearing on the Motion to Dismiss on October 21, 2024. At that time, the Debtor reiterated its intention to return to state court to attack the foreclosure judgment amount. The Secured Creditor reiterated its position that the $250,000 payment was in fact credited to the Debtor's account and showed Debtor's Counsel its proof of claim (No. 1), filed in this case on September 24, 2024, which shows exactly how the payment was applied. When Secured Creditor's counsel presented the proof of claim to Debtor's Counsel in the courtroom, Debtor's Counsel had no response and just shrugged his shoulders. It became clear to the Court that the Weiss Firm never even looked at documents showing the very argument the Debtor was attempting to make, which was the very foundation for this chapter 11 filing, was without merit. The Court, having received no explanation from the Weiss Firm except an acknowledgement that the case was over, granted the Motion to Dismiss and directed the UST to submit a proposed order.

On October 24, 2024, this Court entered an order directing the Debtor to file all outstanding Monthly Operating Reports ("MORs") and pay all outstanding UST quarterly fees within ten days of the order ("October 24 Order"). ECF 33. The October 24 Order further

directed that the Debtor's case would be dismissed upon the submission of a proposed dismissal order by the UST after the MORs were filed and the UST fees paid. The October 24 Order directed the Weiss Firm to file an application for compensation within 10 days, *i.e.*, November 4, 2024, and retained jurisdiction to determine the "reasonableness of the $30,000 legal fee paid to" the Weiss Firm. By October 29, 2024, MORs were filed through the end of September 2024. ECF 12, 23, 34, 35.

On October 31, 2024, the Debtor filed a notice of appeal of the October 24 Order. ECF 37. It appears that the Debtor intended to appeal the dismissal of the case, however, the dismissal order was never submitted by the UST, or entered, as contemplated by the October 24 Order.

On November 12, 2024, the Weiss Firm late-filed the instant fee application. ECF 43. On November 26, 2024, the UST objected, ECF 49, and the Weiss Firm filed a reply, ECF 53.[3] A hearing on the fee application was held on December 2, 2024 at which time this Court took the matter under submission.

## DISCUSSION

The UST objects to the Fee Application on several grounds: (a) there is an "imbalance" between the fees charged and the benefit to the estate; (b) the timesheets contain numerical discrepancies that cause them to be unreliable; (c) the expenses sought are undocumented; and

---

[3]      The Weiss Firm objects to the Court's consideration of the UST's objection to its fees, in part because the UST's response was not filed at least seven days before the hearing. The Court will consider the UST's objection, filed six days prior to the December 2, 2024 hearing date, just as the Court will consider the Weiss Firm fee application even though it was filed more than one week after the deadline set by the October 24 Order.

(d) counsel did not, during the four and a half months that this case was pending, formulate, or take significant steps towards, an exit strategy for this case.

The Weiss Firm argues that it is entitled to compensation for its work in this case because, although the case was dismissed after four and a half months, the case did benefit the Debtor and the estate, and the Weiss Firm aided the Debtor in complying with its duties under the Code such as by filing schedules and monthly operating reports, attending the requisite meetings conducted by the UST and all Court hearings, and by ensuring the Debtor opened a debtor-in-possession bank account.

### *Award of compensation and reimbursement of expenses under § 330*

Pursuant to § 330 of the Code, the Court may award the Weiss Firm "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). "The court may, on its own motion or on the motion of the United States Trustee, . . . award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2). "In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

      The Court *shall not* allow compensation for—

(i) unnecessary duplication of services; or
(ii) services that were not--
      (I) reasonably likely to benefit the debtor's estate; or
      (II) necessary to the administration of the case.

11 U.S.C. § 330(a)(4)(A) (emphasis added).

      The Court finds that the Weiss Firm's services in this case were not reasonably likely to benefit the Debtor's estate and for that reason will deny any compensation for services rendered.

      This is a single asset real estate case. At the time of filing the only creditor of the estate was the over secured, Secured Creditor. The Debtor entered bankruptcy with the intention of using the automatic stay to buy time to attack a state court determination of the balance due to the Secured Creditor. Simultaneously, the Debtor indicated that it intended to obtain financing to pay off the Secured Creditor, or alternatively to sell the Property. Even assuming the Weiss Firm had developed a viable legal theory requiring the bankruptcy court, such as by approving a refinance of the debt or a sale of the Property, counsel's time sheets contain no evidence that the Weiss Firm took any steps towards accomplishing these goals.[4] Although the Weiss Firm represented to this Court that the Debtor had obtained third-party financing to effectuate a refinance of the Secured Creditor, ECF 28, its time sheets contain no mention of conversations with counsel for the Secured Creditor, or the alleged third-party financer. Four months into the

---

[4]       The Debtor's motion for comfort order regarding the automatic stay was not filed until October 11, 2024 – six weeks after the Motion to Dismiss was filed, and four months post-Petition Date. ECF 29. In addition, it was only in response to the Motion to Dismiss that the Weiss Firm filed a motion to retain a broker to sell the Property. ECF 26.

case the Debtor produced no evidence that there was in fact a proposed third-party financer. When questioned in Court about the details of the alleged third-party financing, Debtor's Counsel had no information and responded that the client had all the details. By counsel's own admission, it was only the client, *i.e.*, the Debtor's principal, who allegedly made any efforts towards obtaining a refinance of the secured debt. Equally disconcerting is that the Weiss Firm was unable to respond to the Secured Creditor's proof of claim which showed that the allegedly uncredited $250,000 payment was in fact included in the Secured Creditor's calculation of its proof of claim. Counsel here was not being asked to understand a difficult legal concept. It was only being asked to recognize an entry on an attachment to the Secured Creditor's proof of claim, which the Weiss Firm appears never to have reviewed.

The Weiss Firm argues that it is entitled to be paid its fees and expenses as billed because counsel has "complied with and satisfied each and every procedural and statutory obligation." ECF 53, ¶20. By this statement, the Weiss Firm makes it abundantly clear it has no real understanding of what is required of a chapter 11 attorney. The Court, for purposes of this Decision, will not challenge that to the best of their ability the Weiss Firm did perform the services as required by statute. The Weiss Firm prepared the Debtor's petition, schedules, amended schedules, and other required documentation. An attorney from the Weiss Firm was present at all court proceedings and did represent the Debtor. The Weiss Firm prepared and filed responses to the Motion to Dismiss; filed a motion to set a bar date; filed an application to retain a broker; and filed a motion for comfort order regarding the Debtor's intention to return to state court to dispute the foreclosure judgment amount.

In this Court's view, there is more to representing a chapter 11 debtor than aiding the Debtor in complying with its statutory duties and appearing at hearings, *i.e.*, satisfying the bare

minimum of obligations sufficient to obtain the benefits of the automatic stay. If this were a chapter 7 case, counsel's services in aiding the Debtor's compliance with its responsibilities under the Code would have been entirely reasonable because in chapter 7 the administration of the case is the trustee's responsibility. However, this is not a chapter 7 case, and the role of chapter 11 debtor-in-possession's counsel involves not only protecting the debtor, and in many cases the debtor's principal, but administering the case and protecting the chapter 11 process with the ultimate goal of providing a fair and equitable distribution of assets to creditors. To accomplish this chapter 11 debtor's counsel must have a firm understanding of the law and how to apply it. To add value warranting compensation, the chapter 11 debtor's counsel must enter the bankruptcy proceeding with, at a minimum, a viable theory to support a successful emergence from bankruptcy. *See, e.g., In re Crown Oil, Inc.*, 257 B.R. 531, 539 (Bankr. Mont. 2000). That is not to say that counsel is a guarantor of success; but there has to be some articulated plan for success, and by success the Court means concluding the case with a confirmed plan of reorganization or liquidation.

To further the stated goal of attacking the state court judgment, the Weiss Firm did bill five hours to "drafting and research of NYS court action … to vacate judgment." The Court believes it likely that the Weiss Firm advised the Debtor that it could file bankruptcy to buy time solely to obtain this result; to obtain a stay of the state court proceedings that it could not otherwise obtain in state court. The chapter 11 process is not intended to provide a safe harbor for a debtor solely to delay creditors. This is not a proper use of bankruptcy or the automatic stay. The state court provides a variety of procedures to achieve the Debtor's stated goal. Reconsideration of calculations in a foreclosure judgment is seemingly a routine dispute that state court appointed referees deal with every day. There is no legal issue that requires

bankruptcy court consideration. Clearly the state court system is equipped to resolve this. Where the federal court can or should become involved is normally clear to bankruptcy attorneys. The bankruptcy court should not be utilized to circumvent state court procedures when that is the sole purpose. If the Debtor believed that the $250,000 payment made by the Debtor's principal was not applied to the outstanding balance, the proper place to raise that argument was in state court, not here, as the Weiss Firm admitted when it recognized that the *Rooker-Feldman* doctrine prohibits this Court from acting as a state court appellate tribunal. ECF 53, ¶12.

The Weiss Firm filed this case solely to prevent the foreclosure sale of the Property by utilizing the automatic stay. Having failed in state court, the Weiss Firm used the bankruptcy process, designed to help legitimate debtors, for a purpose for which it should not be used. The Weiss Firm had no legal theory or viable plan to emerge from bankruptcy in this case. The automatic stay is the most powerful tool in a bankruptcy lawyer's arsenal, and this Court will not allow it to be used in the manner the Weiss Firm utilized it in this case.

The Court acknowledges that countless bankruptcy cases have been filed to halt foreclosure proceedings. The underlying rationale is that once the foreclosure sale is completed the debtor loses the ability to use the bankruptcy process. In such cases, bankruptcy is often employed as a legitimate strategy to preserve a debtor's legal options. However, the bankruptcy professional who files the case must have a clear and effective plan as to how the debtor might achieve its desired outcome. The filing must be part of a broader strategy aimed at preserving the debtor's property. While many of these scenarios have historically been high risk, they often present the court with a plausible legal theory that suggests the debtor has a viable chance of success. Such cases frequently highlight the creativity and expertise of seasoned bankruptcy professionals who offer sophisticated guidance to their clients and demonstrate skill in

navigating complex legal challenges. Unfortunately, filing bankruptcy solely for the purpose of delaying creditors is what a large portion of this Court's smaller chapter 11 cases have become over time, and it has become commonplace and increasingly an accepted use of the bankruptcy process.

As stated in § 330(a)(4), this court "shall not allow compensation for . . . services that were not reasonably necessary to benefit the debtor's estate." "Estate" is not synonymous with "debtor". This is sometimes misunderstood, but debtor's counsel represents the interests of the estate not the principals. The Weiss Firm's assistance to the Debtor in complying with its duties under chapter 11 provided no benefit to the estate in terms of helping to formulate a reorganization or liquidation plan to emerge from bankruptcy. The Weiss Firm failed to understand that its actions benefited only the Debtor and its principal, not the Debtor's estate, and even then, only to the extent necessary to satisfy the Debtor's most basic obligations in bankruptcy.

Clearly, the filing of this bankruptcy case benefited the Debtor in that it obtained a stay of state court proceedings that it could not otherwise have obtained in state court. However, a benefit to the estate would require some possibility of a successful liquidation or reorganization - some benefit to creditors. The Court finds that this was not the purpose of this bankruptcy case; the purpose was solely to obtain a stay of the state court foreclosure and frustrate the secured creditor. *See In re Kohl*, 95 F.3d 713, 714 (8th Cir. 1996) ("[A]n attorney fee application in bankruptcy will be denied to the extent the services rendered were for the benefit of the debtor and did not benefit the estate.") (quoting *In re Reed*, 890 F.2d 104, 106 (8th Cir. 1989); *In re Berg*, 268 B.R. 250 (Bankr. D. Mont. 2001) (finding attorneys not entitled to compensation where attorneys' services merely enabled debtor to prolong a doomed chapter 11 case, to

detriment of creditors). There was no viable strategy here to confirm a plan for the benefit of creditors, and the very fact that by adding three minor creditors the Weiss Firm believed they had created a viable case demonstrates the extraordinary lack of basic chapter 11 understanding.

Although bankruptcy judges for the most part will give some limited breathing room with the hope of a consensual resolution, one aspect of the bankruptcy judge's job is to balance the rights of the parties within the parameters of the Code. With a case like this that window of time should be very short. Permitting cases like these to linger sometimes for years is not only inconsistent with the law but it undermines faith in the system.[5]

Although the Court's power to prevent the misuse of the bankruptcy process is limited, in chapter 11 it does have discretion to deny compensation to counsel who permits the Code to be used in this way. In this Court's view, the use of the automatic stay solely to frustrate a secured creditor with no legitimate legal plan is not a service a lawyer should be compensated for by a bankruptcy court. The Court made Debtor's Counsel aware of its concerns with this case from the very first status hearing. Even the most inexperienced bankruptcy attorneys would have understood the infirmities in this case and the risks of proceeding.

For all these reasons, the Court will exercise its discretion to deny in full the Weiss Firm request for compensation, under § 330(a)(4)(A) because the services were not "reasonably likely to benefit the Debtor's estate." *See e.g.*, *In re Tribeca Market, LLC*, 516 B.R. 254, 269 (S.D.N.Y. 2014) ("A bankruptcy court's decision to award attorney's fees is reviewed for abuse of

---

[5]      It is important to note that the filing of this bankruptcy case was not without consequences to the Secured Creditor, the largest and for most of the time this Debtor was in bankruptcy, the only scheduled creditor. The Secured Creditor loaned the Debtor $360,000 in 2015, with a maturity date of April 1, 2017. At the time of entry of the foreclosure judgment six years after maturity, the debt had grown to over $700,000, and this bankruptcy filing was just another step in delaying payment of the secured debt.

discretion."). The Court will approve only the payment of expenses to the Weiss Firm, in the amount of $2,400 upon proper documentation of these expenses being provided to the UST.

### *Disgorgement and the pre-petition retainer*

Section 329 of the Code provides that if any compensation paid or agreed to be paid to an attorney representing the debtor exceeds the reasonable value of counsel's services, "the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to-- (1) the estate, if the property transferred-- (A) would have been property of the estate; or (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or (2) the entity that made such payment. 11 U.S.C. § 329(b).

Debtor's Counsel advised this Court that the $30,000 prepetition retainer received from the Debtor was held by the Weiss Firm in its general operating account. At the December 2, 2024 fee application hearing, the Court upbraided Debtor's Counsel for holding the retainer in the firm's general operating account and cautioned against it. On December 4, 2024, Mr. Weiss docketed an affirmation stating that the retainer was transferred "from the general operations account to my escrow account." ECF 55, ¶3. The Court finds that the Weiss Firm shall return the balance of the retainer, after payment of its expenses as stated above, to the Debtor.

### CONCLUSION

This Court accepts that chapter 11 will likely continue to be used on an emergency basis solely to obtain the benefits of the automatic stay to give debtors time to negotiate with, for example, secured creditors, landlords, or other parties, or to stay enforcement of a judgment. For the vast majority of small bankruptcy matters, the debtor has a viable path to reorganize or liquidate as permitted by the Code. This Decision should not be viewed as limiting relief to the

honest debtor in anyway. That said, the fee application of chapter 11 debtor's counsel who uses the chapter 11 process with no plan but merely to delay a secured creditor should be carefully scrutinized by the court and, when appropriate, fees should be disallowed. The approval of debtor's counsel fees by the bankruptcy court is a critical component of the bankruptcy process, and each professional retained by a chapter 11 debtor must be fully aware that fees are subject to court approval. This is a fundamental issue: professionals who use the bankruptcy process as the Weiss Firm has done in this case should understand the risk that a court may deny their compensation as requested. This Court hopes that bankruptcy attorneys and courts will recognize this concern and develop appropriate procedures to restore balance and integrity to the system.

The UST is directed to submit a proposed order consistent with this Decision.



Dated: Central Islip, New York
January 17, 2025

Robert E. Grossman
United States Bankruptcy Judge